# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| ADAM ELSAYED, on behalf of himself and all other similarly situated employees, | : : : : | |
| Plaintiff, | : : | Case No. 17-cv-03579-JLS |
| v. | : : : | |
| BUILD-A-BEAR WORKSHOP, INC., | : : | |
| Defendant. | : : : : | |

## PLAINTIFF'S UNOPPOSED MOTION AND MEMORANDUM OF LAW IN SUPPORT OF APPROVAL OF SETTLEMENT

Plaintiff, Adam Elsayed ("Plaintiff"), by and through his undersigned counsel, respectfully moves this Court for entry of an Order:

(1)     approving the settlement set forth in the parties' Settlement Agreement ("Agreement"), attached as Exhibit 1 to the Declaration of Jason Conway ("Conway Decl.");[1]

(2)     approving the payment of attorneys' fees and expenses to Plaintiff's counsel;

(3)     dismissing this action with prejudice; and

(4)     retaining jurisdiction over this matter for three (3) months for the limited purpose of enforcing the Agreement.

The settlement satisfies all criteria for approval of a Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. collective action because it resolves a *bona fide* dispute between the parties

---

[1] Defined terms in the Agreement are incorporated herein.  Pursuant to the terms of the Agreement, the Agreement has been submitted to the Court for *in camera* review and Plaintiff has filed a redacted version of the instant motion and memorandum of law on ECF.

and was reached as a result of arm's-length settlement negotiations conducted by counsel well-versed in employment law.  In support, Plaintiff states as follows:[2]

## I.    **INTRODUCTION**

This proposed settlement resolves claims that Plaintiff and nineteen (19) other individuals who have opted-in to this action (collectively, "Opt-Ins") were deprived of overtime compensation for all hours worked in excess of 40 in a workweek while they were employed by Defendant, Build-A-Bear Workshop, Inc. ("Defendant" or "Build-A-Bear Workshop") as Chief Workshop Managers ("CWMs") in the United States, except California, between March 1, 2015 and October 30, 2016, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*.  *See generally* Complaint.  ECF No. 1;[3] Conway Decl., ¶ 5.

Build-A-Bear Workshop operates more than 200 retail stores in the United States.  *See* Complaint ¶ 8.  Prior to October 30, 2016, at each of its retail stores outside of California, Build-A-Bear employed CWMs on a salaried basis and classified them as exempt from federal and state overtime laws.  *Id*.; Conway Decl., Ex. B (Deposition of Darlene Elder ("Elder Dep. Tr.)), 39:23-40:12.[4]  As a result, prior to October 30, 2016 CWMs outside of California received no overtime compensation for working more than 40 hours in a workweek.  *Id*.; Elder Dep. Tr,. at 39:23-40:7-12.  Plaintiff alleged that, prior to October 30, 2016, Build-A-Bear Workshop should have classified CWMs outside of California, including himself, as non-exempt and paid them premium

---

[2] Defendant has reviewed the instant motion and does not oppose the relief sought by Plaintiff.

[3] The Complaint refers to the position in question as "Store Manager," which is otherwise referred to as Chief Workshop Manager (or "CWM").  For purposes of the settlement, the parties agree that all references in the Complaint to Store Manager shall be to the position of CWM, including CWMs-in-Training who participated in Defendant's mandatory training program prior to becoming a CWM.

[4] After October 30, 2016 CWMs outside of California were re-classified by Defendant as non-exempt and otherwise entitled to receive overtime compensation for all hours worked beyond forty (40) in a workweek.

overtime compensation (calculated at 150% of the regular pay rate) for all hours worked over 40 in a workweek. *See generally* Complaint.

Whether CWMs outside of California, including Plaintiff and Opt-Ins, were properly classified as non-exempt under the FLSA prior to October 30, 2016 turns on whether or not their "primary duty" was "management." *See* 29 C.F.R. § 541.100(a)(1). Resolution of this issue turns on hotly disputed issues of fact and law. *Compare e.g., Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233 (11th Cir. 2008) ("primary duty" of Family Dollar Store Managers is not "management"), with *In re Family Dollar FLSA Litig.*, 637 F.3d 508 (4th Cir. 2011) ("primary duty" of Family Dollar Store Managers is "management"). Build-A-Bear Workshop maintained that its classification of CWMs as overtime-exempt prior to October 30, 2016 was entirely proper, and no court or governmental agency has found otherwise. ██████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████

Accordingly, and for the reasons outlined below, the Court should respectfully find that this settlement resolves a *bona fide* dispute between the parties and that the Agreement is fair and reasonable in all respects.

## II.    <u>PROCEDURAL HISTORY</u>

In September 2017, Build-A-Bear Workshop answered Plaintiff's Complaint by denying liability and raising defenses alleging, for example, that: (i) Plaintiff and the Opt-Ins were not similarly situated for purposes of the FLSA (*see* Answer (ECF No. 4), Affirmative Defense No. 2); and (ii) Plaintiff and the Opt-Ins were overtime-exempt. *Id*., Affirmative Defense No. 6. Thereafter, the parties participated in discovery and, among other things, exchanged written discovery, and took the depositions of Plaintiff, one Opt-In, and the corporate designee of Build-

A-Bear Workshop; Conway Decl., ¶ 8.

On March 13, 2018, the parties stipulated to conditional certification of the FLSA collective. ECF No. 27. The parties were unable to agree to the form of the notice and consent to be sent to the putative members of the FLSA collective and, thereafter, submitted competing versions for the Court's consideration. ECF Nos. 28 and 29. The Court heard oral arguments from both sides on April 23, 2018 (ECF No. 30), and ultimately adopted Defendant's version of the notice and consent form. ECF No. 31.

The collectives were defined as:

> (a)    All CWMs employed by Defendant at any Build-A-Bear location in the United States, except California, between March 1, 2015 and October 30, 2016; and

> (b)    All CWMs who participated in Defendant's SM training program at any Build-A-Bear location in the United States, except California, between March 1, 2015 and October 30, 2016.

ECF No. 27. Build-A-Bear Workshop reserved the right to decertify the FLSA collective later in the litigation. *Id.* at 3. Notice of the collective action was subsequently mailed notice to approximately 300 individuals and, in response, 21 individuals – in addition to the original named Plaintiff – joined the FLSA collective;[5] Conway Decl., ¶ 11.

Following the close of the notice period, the parties had fundamental disagreements concerning discovery, as well as the discoverability of certain information. Conway Decl., ¶ 12. These disagreements resulted in a stay of discovery (ECF No. 51) until September 11, 2018 when the Court entered a discovery order. ECF No. 55. Defendant served written discovery (including

---

[5] Two individuals subsequently voluntarily withdrew their claims. *See* ECF No. 67.

multiple interrogatories and requests for production of documents) on each of the Opt-Ins and ultimately deposed 10 individuals, including Plaintiff and nine Opt-Ins.  Conway Decl., ¶ 12.

As indicated by Plaintiff's contemporaneous time records, the time spent reaching out to the Opt-Ins, obtaining discovery responses, gathering and reviewing responsive documents (including those produced by Defendant), preparing Plaintiff and the Opt-Ins for deposition and, ultimately, defending them (at locations across the country) was time-consuming.  *Id.*, ¶ 13.  In particular, the interrogatories called for information from Plaintiff and all Opt-Ins, which required lengthy discussions with, and the collection of discovery from, each.  In sum, Plaintiff's counsel provided answers to the interrogatories and responded to document requests for 14 Opt-Ins, prepared for and defended 10 depositions (not including depositions of Build-A-Bear Workshop's corporate designee and pertinent other witnesses), and produced several hundred pages of documents.  *Idi.*

In addition, Build-A-Bear Workshop produced and disclosed more than 170,000 pages of documents and electronically stored information. *Id.*, ¶ 14.  These documents consisted of, among other things, e-mail, spreadsheets, personnel records, job descriptions, policies and procedures, training materials, schedules, and payroll information showing the salaries paid to Plaintiff and the Opt-Ins.  *Id.*  Plaintiff's counsel utilized the payroll information to calculate damages for purposes of settlement.  *Id.*

Despite the efforts of Plaintiff's counsel, not all of the Opt-Ins were responsive and fully participated in the discovery process and, as a result, the parties engaged in motion practice concerning the failure of these individuals to respond to discovery. ECF Nos. 78, 83, 84. Nevertheless, counsel reestablished communication with each of the non-responsive Opt-Ins who, recognizing the benefits conferred by the settlement, agreed to resolve their claims.  Conway Decl., ¶ 15.

Prior to completing discovery and engaging in dispositive motion practice, the parties – with the assistance of Magistrate Judge Rice – agreed to further settlement discussions between counsel and, thereafter, negotiated and executed the Agreement.  Conway Decl., ¶ 16; Agreement, Ex. A.  Plaintiff and all 19 Opt-Ins have signed the Agreement.  *Id.*

## III.    <u>TERMS OF THE SETTLEMENT</u>

The Agreement's terms are straightforward.  ███████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██

─────────────────────

██
███████████████████████████████████████████████

███████████████████████████████████

## IV.    **LEGAL ARGUMENT**

As the Third Circuit Court of Appeals has observed, "there is an overriding public interest in settling class action litigation."  *In re Warfarin Sodium Antitrust Litig*., 391 F.3d 516, 535 (3d Cir. 2004).  The parties to an FLSA action can resolve their dispute and enter into a valid waiver of an employee's FLSA claims in either of two ways.  *Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516, 522 (E.D. Pa. 2016).  First, an employee may settle and waive claims under the FLSA if the payment of unpaid wages by the employer to the employee is supervised by the Secretary of Labor. 29 U.S.C. § 216(c); *Kraus*, 155 F. Supp. 3d at 522; *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982).  Second, an employee may settle and waive claims under the FLSA if the parties present a proposed settlement to a district court which may enter a stipulated judgment "if it determines that the compromise reached is a 'fair and reasonable resolution of a *bona fide* dispute over FLSA provisions' rather than a 'mere waiver of statutory rights brought about by an employer's overreaching.'"  *Kraus*, 155 F. Supp. 3d at 523 (quoting *Lynn's Food*, 679 F.2d at 1354 (citations omitted)); *see also* 29 U.S.C. § 216(b).[7]

After determining whether the settlement concerns a bona fide dispute, courts in this Circuit generally conduct a two-part inquiry to ensure that (1) the settlement is fair and reasonable for the employees, and (2) the settlement agreement furthers the FLSA's implementation in the workplace.  *See Mabry v. Hildebrandt*, No. 14-5525, 2015 U.S. Dist. LEXIS 112137, *3 (E.D. Pa. Aug. 24, 2015); *McGee v. Ann's Choice, Inc*., No. 12-2664, 2014 U.S. Dist. LEXIS 75840, *2 (E.D. Pa. June 4, 2014).

---

[7] Although the Third Circuit has not addressed whether parties can settle FLSA actions claiming unpaid wages without court approval, district courts within the Circuit have followed the approach endorsed by a majority of courts and assumed that judicial approval is necessary.  *See Mitchell v. People for People Charter Sch., Inc*., No. 17-2416, 2018 U.S. Dist. LEXIS 72691, *3 (E.D. Pa. Apr. 27, 2018) (citations omitted); *see also, Howard v. Phila. Housing Auth*., 197 F. Supp. 3d 773 (E.D. Pa. 2016); *Kraus*, 155 F. Supp. 3d at 522; and *Bettger v. Crossmark, Inc*., No. 13-cv-2030, 2015 U.S. Dist. LEXIS 7213, 2015 WL 279754, *3 (M.D. Pa. Jan. 22, 2015) (collecting cases).

Courts view the adversarial nature of an FLSA case to be an indicator of the fairness of the settlement. *Lynn's Food Stores*, 679 F.2d at 1353-54. In addition, the Court should be mindful of the strong presumption in favor of finding a settlement is fair. *Id.*, at 1354; *Galt v. Eagleville Hosp.*, No. 15-cv-6851, 2018 U.S. Dist. LEXIS 66406, at *20 (E.D. Pa. Apr. 19, 2018) ("[A] settlement is entitled to an initial presumption of fairness where it results from arm's-length negotiations between experienced counsel, [and] there was sufficient discovery . . . .").[8] In light of these standards, approval of the settlement agreement is appropriate.[9] *See Metzler v. Weis Mkts, Inc.*, 2016 Pa. Dist. & Cnty. Dec. LEXIS 67, at *5 (N. Cty. June 6, 2016) (approving $2.47 million settlement of FLSA and Pennsylvania unpaid overtime claims on behalf of class/collective of exempt-classified retail managers).

## A.    The Settlement Resolves a *Bona Fide* Dispute Between the Parties

The Court must first address the threshold question of whether the proposed Agreement resolves a *bona fide* dispute. A dispute is "*bona fide*" where it involves "factual issues rather than legal issues such as the statute's coverage and applicability." *Kraus*, 155 F. Supp. 3d at 530 (citing *Creed v. Benco Dental Supply Co.*, No. 12-01571, 2013 U.S. Dist. LEXIS 132911, *1 (M.D. Pa. Sept. 17, 2013)) (internal quotation marks omitted). A proposed settlement resolves a *bona fide*

---

[8] An FLSA settlement may also be approved as fair, even where the plaintiff receives less than the amount they may have otherwise been entitled to under the law, particularly given the risks associated with litigation. *Rutland v. Visiting Nurse Ass'n of Cent. Fla., Inc.*, No. 6:07-cv-1130-ORL-19DAB, 2008 U.S. Dist. Lexis 61776 (M.D. Fla. July 29, 2008) (approving FLSA settlement where the named plaintiff settled for approximately 6% of the wages she originally claimed).

[9] In considering these factors and determining whether to approve a settlement, the Court "does not resolve the legal and factual issues that are the basis of the underlying lawsuit." *Bronson v. Bd. of Educ. of City Sch. Dist.*, 604 F. Supp. 68, 74 (S.D. Ohio 1984); *see also DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995) ("[W]hile it is incumbent on the [] court to determine the propriety of the settlement, it need not resolve all of the underlying disputes."). A settlement "is a compromise which has been reached after the risks, expense, and delay of further litigation have been assessed." *Williams v. Vukovich*, 720 F.2d 909, 922 (6th Cir. 1983); *see also Buchana*, 393 A.2d at 710-11.

dispute where its terms "reflect a reasonable compromise over issues, such as … back wages, that are actually in dispute" and not a "mere waiver of statutory rights brought about by an employer's overreaching." *Kraus*, 155 F. Supp. 3d at 530 (citing *Lynn's Food Stores*, 679 F.2d at 1355). For a *bona fide* dispute to exist, "the dispute must fall within the contours of the FLSA and there must be evidence of the defendant's intent to reject or actual rejection of that claim when it is presented." *Kraus*, 155 F. Supp. 3d at 530.

Here, the existence of a *bona fide* dispute is clear: Build-A-Bear Workshop maintained that, prior to October 30, 2016, its classification of CWMs outside of California as exempt was proper and that, if it had violated the FLSA, it did not do so willfully (as alleged by Plaintiff). In addition, multiple disputed questions of fact and law exist, including as to the work performed by Plaintiff and the Opt-Ins, the hours they worked each week, the proper standards for willfulness and good faith, and how damages are determined. Accordingly, as here, the existence of a *bona fide* dispute "serves as a guarantee that the parties have not manipulated the settlement process to permit the employer to avoid its obligation under the FLSA." *Filby v. Windsor Mold USA, Inc.*, No. 13-cv-1582, 2015 U.S. Dist. LEXIS 30034, at *6 (N.D. Ohio Mar. 11, 2015); *Hernandez v. Earth Care, Inc.*, No. 15-5091, 2016 U.S. Dist. LEXIS 96425, at *6 (E.D. Pa. July 25, 2016) (finding in FLSA action that "[d]isagreements over hours worked or compensation due clearly establish a bona fide dispute") (citations and internal quotation marks omitted); *Guice v. DIRECTV, LLC*, 2018 U.S. Dist. LEXIS 88585, *6 (E.D. Pa. May 24, 2018) (same); *Swigart v. Fifth Third Bank*, No. 11-cv-88, 2014 U.S. Dist. LEXIS 21690, at *3-4 (S.D. Ohio Feb. 19, 2014) (approving FLSA settlement where it reflected a reasonable compromise over contested issues, including [] whether Defendant properly classified Plaintiffs as exempt and Defendant's good faith defense").[10]

Inasmuch as the parties had a fulsome understanding of the issues from the course of the settlement discussions, information from their clients, extensive document and deposition testimony obtained during the course of litigation, as well as the data and information produced for settlement purposes, they understood the risks and potential course of continued (and protracted) litigation. In Plaintiff's counsel's opinion, continued litigation of this action would have been detrimental to the claims of Plaintiff and the Opt-Ins – even though they may have stood to potentially receive a greater recovery at trial – because Defendant may have prevailed in decertifying the conditionally certified FLSA collective action as well as on any summary judgment motion. Against this backdrop, the settlement involved protracted negotiations. Conway Decl., ¶¶ 28-29. Arm's-length negotiations conducted by competent counsel constitute prima facie evidence of a fair settlement. *Lynn's Food Stores*, 679 F.2d at 1354; *Galt*, 2018 U.S. Dist. LEXIS 66406, at *20; *see also Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001).

**B.    The Settlement Is Fair and Reasonable**

In determining whether FLSA settlements are fair and reasonable, federal courts in the Third Circuit consider: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risk of establishing damages; (6) risk of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible

---

██████████████████████████████
██████████████████████████████         These are the clear hallmarks of a *bona fide* dispute between the parties and serve as a guarantee that the settlement process has not been manipulated to permit Defendant to avoid its obligations under the FLSA. *Kraus*, 155 F. Supp. 3d at 531 (finding a *bona fide* dispute existed where the terms of the settlement agreement coupled with the defendants' denial of the allegations assured the court that there was not a mere waiver of statutory rights brought about by an employer's overreaching) (citing *Lynn's Food Stores*, 679 F. 2d at 1355).

recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) (applying nine-factor test to evaluate the fairness of a class action settlement); *see also Lyons v. Gerhards, Inc.*, No. 14-06693, 2015 U.S. Dist. LEXIS 92348, *9-10 (E.D. Pa. July 16, 2015) (applying the nine-factor test in *Girsh* to evaluate the fairness of an FLSA settlement); *McGee*, 2014 U.S. Dist. LEXIS 75840, at *5-6 (same); *In re Chickie's & Pete's Wage & Hour Litig.*, No. 12-cv-6820, 2014 U.S. Dist. LEXIS 30366, at *7-8 (E.D. Pa. Mar. 7, 2014) (same). Here, all nine factors weigh in favor of approval.

### *Girsh* Factor 1: The Complexity, Expense and Duration of the Litigation

Continued litigation of this case would be burdensome, time-consuming and expensive for the parties, and they will need to devote time and resources to completing discovery (including, in the case of Plaintiff, taking corporate and other relevant witness depositions), a potentially lengthy trial, post-trial briefing, and appellate proceedings. *See In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 318 (3d. Cir. 1998) (finding that the complex nature of the case, the high expenses and likelihood of years passing without resolution weighed in favor of settlement); *Kritzer v. Safelite Solutions, LLC*, No. 10-v-0729, 2012 U.S. Dist. LEXIS 74994, 21-22 (S.D. Ohio May 30, 2012) (approving settlement where, among other things, the parties would be likely to undertake great expense in pursuing discovery). The action would also have continued to burden the Court and strain its resources, as discovery was incomplete (and may have involved additional disputes requiring further Court intervention), and the parties were expected to engage in extensive motion practice (not only with respect to more discovery disputes, but as to final certification/decertification of the conditionally certified collective action, and dispositive motions). *See e.g., Doe v. Deville*, 257 F.3d 309, 322 (3d. Cir. 2001) ("The law favors settlement, particularly in class actions and other complex cases, to conserve judicial resources."); *Moore v.*

*Comcast Corp.*, No. 08-773, 2011 U.S. Dist. LEXIS 6929, *7 (E.D. Pa. Jan. 24, 2011) ("Settlement of complex class action litigation conserves valuable judicial resources, avoids the expense of formal litigation, and resolves disputes that otherwise could linger for years."). Thus, this factor favors approval of the settlement.

### *Girsh* Factor 2: The Reaction of the Class to the Settlement

Plaintiff and the 19 Opt-Ins who joined this action were informed of the terms of the Agreement and each unreservedly supports it (as evidenced by their signatures to the Agreement and consent to be bound by its terms). Such a positive reaction to the settlement, including as to each individual's anticipated payout amount, reflects that the Agreement is an excellent result. Accordingly, this factor also weighs in favor of approval.

### *Girsh* Factor 3: Stage of the Proceedings and Amount of Discovery Completed

In determining whether this factor weighs in favor of approval, the Court should ascertain whether the case has progressed to a point where the parties have sufficient knowledge to reasonably determine that settlement is in their best interest. This factor – which addresses "whether counsel had an adequate appreciation of the merits of the case before negotiating," *see In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001) – favors approval.

Here, the settlement was reached after several months of exhaustive negotiations and extensive document and deposition discovery, including an exchange of settlement information and data by the parties which informed counsel's decision-making and allowed the parties to act intelligently in negotiating and agreeing to this settlement.

### *Girsh* Factors 4 and 5: Risks of Establishing Liability and Proving Damages

These factors "examine what the potential rewards (or downside) of the litigation had class counsel elected to litigate the claims rather than settle them." *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 814 (3d Cir. 1995). In a misclassification wage and hour case

like this one, there are significant risks for Plaintiff and Opt-Ins (as well as Defendant) if this case is not settled, and there are ultimately multiple disputed questions of fact and law which may not be decided in Plaintiff's favor including (1) the job duties performed and hours worked by Plaintiff and the Opt-Ins; (2) whether Plaintiff and the Opt-Ins are similarly situated for purposes of the FLSA; (3) whether Plaintiff and the Opt-Ins spent the majority of their time completing non-management or management work; (4) whether Plaintiff and the Opt-Ins were properly classified as exempt from overtime under the FLSA; and (5) whether Defendant willfully violated the FLSA. Coupled with conflicting court decisions regarding the applicability of FLSA exemptions to retail managers, Plaintiff and the Opt-Ins faced an uphill battle in order to prevail on their claims.[11] *See also Rotuna v. West Customer Mgmt. Grp., LLC,* No. 4:09CV1608, 2010 U.S. Dist. LEXIS 58912, at *16 (N.D. Ohio June 15, 2010) ("Given the uncertainty surrounding a possible trial in this matter, the certainty and finality that comes with settlement also weighs in favor of a ruling approving the agreement. Likewise, such a ruling promotes the public's interest in encouraging settlement of litigation.") (citation omitted); *see also Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *20-21 (approving settlement where the plaintiffs' "likelihood of success was far from certain" and noting that the lower the likelihood the more desirable the settlement) (citation omitted); *Kraus*, 155 F. Supp. 3d at 532 (approving settlement of plaintiff's FLSA claims "in light of the significant weaknesses" in her case). These factors therefore favor approval.

---

[11] *Compare, e.g., Morgan v. Family Dollar Stores, Inc.,* 551 F.3d 1233 (11th Cir. 2008) (plaintiffs' verdict); *Stillman v. Staples, Inc.*, No. 07-849, 2009 U.S. Dist. LEXIS 42247 (D.N.J. May 15, 2009) (same); *Joseph Strauch et al. v. Computer Sciences Corporation,* No. 3:14-cv-00956 (D. Conn.) (same) with *Perkins v. Southern New England Telephone Co Inc.* No. 3:07-00967, Docket No. 578 (D. Conn. Oct. 24, 2011) (defendant's verdict); *Henry v. Quicken Loans, Inc.,* Case No. 4-cv-40346 (E.D. Mich. 17, 2011) (same); *Bell v. Citizens Fin. Group, Inc.*, 2:10-cv-00320 (W.D. Pa.) (Apr. 21, 2013) (same).

**_Girsh_ Factor 6: Risks of Maintaining the Action Through to Trial**

The risk of maintaining this collective action through trial cannot be overstated.  Coupled with a contested FLSA collective action certification process, including competing motions for final certification/decertification of the conditionally certified collective action, as well as likely dispositive motion practice, the certainty of the favorable result achieved for Plaintiff and the Opt-Ins through settlement is, for Plaintiff and the Opt-ins, more appealing.  _See, e.g., McEarchen v. Urban Outfitters, Inc._, No. 13-CV-3569, 2017 U.S. Dist. LEXIS 33335 (E.D.N.Y. Mar. 7, 2017) (report and recommendation decertifying retail manager FLSA misclassification collective action), _adopted by_ 2017 U.S. Dist. LEXIS 144203 (E.D.N.Y. Sept. 6, 2017); _Scott v. Chipotle Mexican Grill, Inc._, No. 12-CV-8333, 2017 U.S. Dist. LEXIS 62902 (S.D.N.Y. Mar. 29, 2017) (decertifying restaurant manager FLSA misclassification collective action); _Stevens v. HMS Host Corp_., No. 10 CV 3571, 2014 U.S. Dist. LEXIS 119653 (E.D.N.Y. Aug. 26, 2014) (decertifying retail sale FLSA misclassification collective action); _Hernandez v. The Fresh Diet_, No. 12-cv-4339, 2014 U.S. Dist. LEXIS 139069 (S.D.N.Y. Sept. 26, 2014) (decertifying misclassification collective action); _Tracy v. NVR, Inc.,_ 293 F.R.D. 395 (W.D.N.Y. 2013) (decertifying outside contractor collective action); _Johnson v. Big Lots Stores, Inc._, 561 F. Supp. 2d 567 (E.D. La. 2008) (decertifying retail store manager collective action).  Indeed, because many Opt-Ins had small potential damages, it is unlikely that many of them would have re-filed individual lawsuits had this case been decertified.  Moreover, because many Opt-Ins live outside of Pennsylvania in multiple states, such as Alabama, Florida, Georgia, Nevada, Ohio, Texas, Washington, it would make representing them in individual lawsuits difficult.  Further, even if the lawsuit was not decertified, the logistics of having a sample of the collective to testify at trial in Reading, PA would have been burdensome and

expensive.[12]  Therefore, this factor also weighs in favor of approval.  *Mabry*, 2015 U.S. Dist. LEXIS 112137, at *5 (approving FLSA settlement where "resolution of [the FLSA] claims via trial would be expensive and difficult for Plaintiff").

### *Girsh* Factor 7: Ability of Defendant to Withstand a Greater Judgment

There is no evidence to suggest that Defendant is unable to pay more than the settlement amount.  *Tavares v. S-L Distrib. Co.*, No. 13-cv-1313, 2016 U.S. Dist. LEXIS 57689, *34 (M.D. Pa. May 2, 2016).  Rather, and to the contrary, the risk of non-payment to Plaintiff and the Opt-Ins is self-evident: the complexity of the overtime exemptions at issue, the possibility of summary judgment and decertification of the conditionally certified collective action, the potential failure at trial, and likelihood of an appeal in the event of a favorable trial outcome, indicate that Plaintiff and the Opt-Ins are at risk for non-payment.  *See Brown v. Progressions Behavioral Servs*., No. 16-6054, 2017 U.S. Dist. LEXIS 108487, at *16 (E.D. Pa. July 13, 2017).  While Defendant may have been able to withstand a greater judgment, had Plaintiff not prevailed on the merits of his claims there would be *no* judgment at all to satisfy.  Accordingly, this factor weighs in favor of approving the settlement.

### *Girsh* Factors 8 and 9: The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation

These factors "test two sides of the same coin: reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." *In re: Warfarin*, 391 F.3d 516, 538 (3d Cir. 2004).  The settlement achieves what Plaintiff and his counsel believe is an excellent result and assures that they will promptly receive cash

---

[12] Because a settlement dispenses with the need for a potential trial, several federal courts have found the utility of this factor minimal at best.  *See e.g.*, *In re NFL Players Concussion Injury Litig*., 821 F.3d 410, 440 ("In a settlement class, [the sixth *Girsch*] factor becomes essentially toothless because a district court need not inquire whether the case, if tried, would present intractable management problems[,] . . . for the proposal is that there be no trial") (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig*., 148 F.3d. at 440).

compensation for their claims.[13]  The settlement involved arm's-length negotiations between counsel with substantial experience in FLSA collective action litigation following extensive discovery, including settlement discovery, and was reached only after the parties vigorously attempted to secure the most desirable outcome for their respective clients.  *Kritzer*, 2012 U.S. Dist. LEXIS 74994, *23-24.  As here, the "[s]ettlement represents a compromise in which the highest hopes of recovery are yielded in exchange for certainty and resolution ..."  *In re Safety Components Int'l, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 92 (D.N.J. 2002).[14]  Given these circumstances, these factors favor approval of the settlement.

In sum, the issues of law and fact have been thoroughly investigated and Plaintiff and the Opt-Ins believe the relief afforded under the settlement is excellent.  Nothing in the course of the parties' negotiations or the substance of the settlement itself discloses grounds to doubt its fairness.  Rather, it supports a finding that the settlement is a fair and reasonable compromise of a *bona fide* dispute.  *Santos v. El Gallito Mexican Bakery II LLC*, 2018 U.S. Dist. LEXIS 42363, *1 (E.D. Pa. March 12, 2018).

---

[13] In considering the fairness of the settlement, the opinion of experienced counsel is entitled to considerable weight.  *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *22-23 (approving FLSA settlement and "defer[ring] to the judgment of experienced trial counsel" where, as here, documentary and deposition discovery informed the parties' settlement negotiations); *In re PaineWebber Limited P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) ("[G]reat weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation."), *aff'd*, 117 F.3d 721 (2d Cir. 1997); *see also*, *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983) ("[T]he value of the assessment of able counsel negotiating at arm's-length cannot be gainsaid. Lawyers know their strengths and they know where the bones are buried.").

[14] The settlement also represents a well-reasoned compromise regarding a number of unsettled issues in this case, including the overtime rate applicable to Plaintiff's and the Opt-Ins' claims, noting that Defendant will likely have argued that the fluctuating work week method of calculating damages applies because Plaintiff and the Opt-Ins allegedly agreed to receive set compensation in exchange for working their prescribed hours.  *Id.*  Accordingly, there is no doubt that "the compensation afforded by the proposed Agreement is fair."  *Kraus*, 155 F. Supp. 3d at 532.  In light of all the circumstances, the relief afforded by the settlement is fair and reasonable and warrants approval.

**C.      The Settlement Furthers the Implementation of the FLSA**

Lastly, the Court must determine whether the Agreement furthers or impermissibly frustrates the implementation of the FLSA in the workplace.  *See, e.g., Mabry*, 2015 U.S. Dist. LEXIS 112137, at *3-4; *McGee,* 2014 U.S. Dist. LEXIS 75840, at *5; *Lyons*, 2015 U.S. Dist. LEXIS 92348, at *8.  Because the terms of the Agreement are narrowly tailored, Plaintiff submits that it furthers the implementation of the FLSA in the workplace.



Accordingly, the Agreement should be approved.[16]

**D.    Attorney's Fees Should Be Approved as Fair and Reasonable**

The FLSA provides for the recovery of reasonable attorney's fees and costs when a worker prevails under the FLSA. 29 U.S.C. § 216(b) ("The court shall in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."); *see also Herzfeld v. 1416 Chancellor, Inc.*, 2015 U.S. Dist. LEXIS 95256, *25 (E.D. Pa. July 22, 2015).

**1.    The Loadstar Method is Used to Calculate Attorney's Fees in An FLSA Case**

In statutory fee shifting cases under the FLSA, courts use the lodestar formula, "which requires multiplying the number of hours reasonably expended by a reasonable hourly rate." *Loughner v. University of Pittsburgh*, 260 F.3d 173, 178 (3d Cir. 2001).



In a recent FLSA action, Judge Diamond of the Eastern District of Pennsylvania approved a settlement that provided $258,300 to 51 individuals and provided for $408,000 in attorney's fees to plaintiffs' counsel. *See Guice*, 2018 U.S. Dist. LEXIS 88585, at *3, 9-11. In holding that the plaintiffs' attorney's fees were reasonable, the court looked to the attorneys' lodestar:

> In determining whether Counsel's fees are reasonable, courts use the "lodestar" method, multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys.

*Guice*, 2018 U.S. Dist. LEXIS 88585, at *8-9; *see also In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 333 (3d Cir. 1998) ("The lodestar method is more commonly applied in statutory fee-shifting cases, and is designed to reward counsel for undertaking socially beneficial litigation in cases where the expected relief has a small enough monetary value that a percentage-of recovery method would provide inadequate compensation."). Judge Diamond also noted in *Guice* that "[u]nless a defendant objects, courts are not required to examine the reasonableness of attorney's fees in individual actions." *Guice*, 2018 U.S. Dist. LEXIS 88585, at *8.

### 2. The Requested Attorney's Fees and Costs are Reasonable



     3.    **Attorney's Fees in FLSA Cases Regularly Exceed the Award to the Prevailing Plaintiff**

"Often FLSA lawsuits involve relatively small damage amounts compared to the complexity of issues and work of the attorneys.  This is precisely why Congress included the fee-shifting provision – to incentivize attorneys to take the case." *Magill v. DIRECTV, LLC*, 2017 U.S. Dist. LEXIS 220429, *13 (C.D. Cal. June 23, 2017).  Thus, a plaintiff's counsel who successfully pursues wage and hour claims "must be adequately compensated for their efforts," otherwise "wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk." *Prasker v. Asia Five Eight LLC*, 2010 U.S. Dist. LEXIS 1445, *17 (S.D.N.Y. Jan. 6, 2010); *see also Sand v. Greenberg*, 2010 U.S. Dist. LEXIS 1120, *9 (S.D.N.Y. Jan. 7, 2010) ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected.").  Civil enforcement of wage and hour laws is an important supplement to the work of government regulators in carrying out the public policy of the FLSA. *See Andersen v. Mt. Clemens Pottery Co*., 328 U.S. 680, 686-687 (1946) (noting the FLSA is a "remedial" statute that embodies "great public policy"); *Morales v. Farmland Foods, Inc*., 2013 U.S. Dist. LEXIS 56501, *20 (D. Neb. Apr. 18, 2013) ("The purpose of the FLSA attorney fees provision is to insure effective access to the judicial process…").

     As a result, there is no rule that the attorney's fees be proportional to the amount recovered by the plaintiff.  As the Sixth Circuit observed in discussing the FLSA's fee-recovery provision:

> The purpose of the FLSA attorney fees provision is to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances. Courts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees here encourages the vindication of congressionally identified policies and rights. Indeed, we have upheld substantial awards of attorney's fees even though a plaintiff recovered only nominal damages.

*Fegley v. Higgins*, 19 F.3d 1126, 1134-35 (6th Cir. 1994).

Consistent with the above, courts frequently award attorney's fees that far exceed the amount of unpaid wages recovered by the employee. As the District of Kansas observed:

> Attorneys' fees for prevailing plaintiffs disable defendants from inflicting with impunity small losses on the people whom they wrong. This goal will often require granting attorney fees larger than the damages award.

*Garcia v. Tyson Foods, Inc.*, 2012 U.S. Dist. LEXIS 170177, *44 (D. Kan. Nov. 29, 2012). Thus, "an attorneys' fee award six times the recovery is not unremarkable." *Id.* at *45; *see also e.g., Cox v. Brookshire Grocery Co.*, 919 F.2d 354, 358 (5th Cir. 1990) ($9,250 fee after plaintiff recovered $1,698); *Bonnette v. Cal. Health & Welfare*, 704 F.2d 1465, 1473 (9th Cir. 1983) ($100,000 fee after plaintiff recovered $20,000); *Souryayong v. Lackawanna Cty.*, 2016 U.S. Dist. LEXIS 11258, *80 (M.D. Pa. Feb. 1, 2016) (awarding attorney's fee of $54,250 for plaintiffs' award of $5,588.30); *Musa v. Soar Corp.*, 2015 U.S. Dist. LEXIS 17398, *2-3, *18 (E.D. Pa. Feb. 12, 2015) (awarding attorney's fees of $37,476.67 for a plaintiff's award of $541); *Price v. Aman & Nikhil, Inc.*, 2014 U.S. Dist. LEXIS 124333, *5 (W.D. Pa. Aug. 27, 2014) (awarding attorney's fee of $20,239 for a plaintiff's judgment of $4,774.50); *Cain v. Almeco USA, Inc.*, 2014 U.S. Dist. LEXIS 70900, *4 (N.D. Ga. May 23, 2014) (declining to reduce attorney's fees even though the "lodestar amount is more than ten times that of her actual and statutory damages." ); *Albers v. Tri-State Implement, Inc.*, 2010 U.S. Dist. LEXIS 23450, *66-86 (D.S.D. Mar. 12, 2010) ($43,797 fee after plaintiffs recovered $2,137); *Heder v. City of Two Rivers*, 255 F. Supp. 2d 947, 955-56 (E.D. Wis. 2003) ($36,204 fee after plaintiff recovered $3,540); *Griffin v. Leaseway Deliveries, Inc.*, 1992 U.S. Dist. LEXIS 20203, *1-2, 19 (E.D. Pa. Dec. 31, 1992) ($33,631 fee after plaintiff recovered $17,467); *Holyfield v. F.P. Quinn & Co.*, 1991 U.S. Dist. LEXIS 5293, *1 (N.D. Ill. Apr. 22, 1991) ($6,922 fee after plaintiff recovered $921.50).

In fact, this Court recently approved a $145,000 settlement involving claims for unpaid overtime under the FLSA on behalf of 22 individuals and awarded $80,000 in attorney's fees and

expenses to the plaintiffs' counsel where their loadstar totaled nearly $300,000.  *Fried v. Ideal Concepts, Inc.*, No. 5:16-cv-03825-JLS, ECF No. 85 (July 17, 2018 Order approving Plaintiffs' Unopposed Motion for Approval of Settlement).  Similarly, Magistrate Judge Hey of the Eastern District of Pennsylvania awarded $73,195.00 in attorney's fees in a case where three plaintiffs recovered $18,495 in unpaid wages at trial. *See Gonzalez v. Bustleton Servs*., 2010 U.S. Dist. LEXIS 85153 (E.D. Pa. Aug. 10, 2010). ███████████████████

████████████████████████████████████████████

███████████████████████████████████

## V.   <u>CONCLUSION</u>

For all the above reasons, Plaintiffs respectfully request that the Court sign and enter the accompanying proposed order approving the settlement of this FLSA action.

Dated: July 17, 2019                                  Respectfully submitted,
       Philadelphia, PA

                                               */s/ Jason Conway*
                                               Jason Conway (PA I.D. No. 317113)
                                               **CONWAY LEGAL, LLC**
                                               1700 Market Street, Suite 1005
                                               Philadelphia, PA 19103
                                               Telephone: (215) 278-4782
                                               Facsimile: (215) 278-4807
                                               E-mail: jconway@conwaylegalpa.com

                                               Gregg I. Shavitz (*admitted pro hac vice*)
                                               Camar R. Jones  (*admitted pro hac vice*)
                                               Logan A. Pardell (*admitted pro hac vice*)
                                               **SHAVITZ LAW GROUP, P.A.**
                                               951 Yamato Road, Suite 285
                                               Boca Raton, FL 33431
                                               Telephone: (561) 447-8888
                                               Facsimile: (561) 447-8831
                                               E-mail: gshavitz@shavitzlaw.com
                                                       cjones@shavitzlaw.com
                                                       lpardell@shavitzlaw.com

                                               ***Attorneys for Plaintiff and Opt-Ins***

## CERTIFICATE OF SERVICE

I certify that on July 17, 2019, I caused a true and correct copy of the aforementioned document to be sent electronically through the Court's CM/ECF system to the below counsel of record for Defendant.

Patrick F. Hulla, Esq.
patrick.hulla@ogletreedeakins.com
Carol Krstulic
carol.krstulic@ogletreedeakins.com
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
4520 Main Street, Suite 400
Kansas, MO 64111
Telephone: (816) 410-2226
Facsimile: (816) 471-1303

***Attorneys for Defendant***

*/s/ Jason Conway*
Jason Conway
